UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES FRANCIS ANGELUS, | ) | |
| | ) | |
| Movant, | ) | No. 3:09-0302 |
| | ) | (Crim. No. 3:04-00072) |
| v. | ) | Judge Echols |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

# MEMORANDUM

James F. Angelus, acting *pro se*, filed a Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (Docket Entry No. 1), to which the Government filed a response (Docket Entry No. 26), and Angelus filed two replies (Docket Entry Nos. 33 & 34).

## I. PROCEDURAL HISTORY

On April 22, 2004, a criminal complaint was filed charging Angelus with assaulting Deputy United States Marshal ("DUSM") Kevin Koback earlier that day. (Criminal Case No. 3:04-00072, Docket Entry No. 1.) Angelus was arrested and taken before a United States Magistrate Judge, who appointed defense attorney Kathleen Morris to represent Angelus. (Docket Entry Nos. 4 & 6.) Angelus then appeared with counsel before the Magistrate Judge for a preliminary hearing and detention hearing on April 28, 2004. Angelus was bound over to the grand jury. He waived his detention hearing and was detained on motion of the Government. (Docket Entry No. 10.) The next day, the federal grand jury indicted Angelus under 18 U.S.C. § 111(a) & (b) for assaulting DUSM Koback with a deadly or dangerous weapon which resulted in the infliction of bodily injury to DUSM Koback. (Docket Entry No. 11.) Section 111(b) provided for an enhanced penalty of not more than twenty (20) years imprisonment for the commission of an assault using a deadly or

1

dangerous weapon or infliction of bodily injury. Angelus waived his personal appearance at arraignment and entered a plea of not guilty. (Docket Entry No. 16.)

On June 9, 2004, attorney Morris filed a sealed motion and her affidavit seeking permission to withdraw as counsel. (Docket Entry Nos. 18 & 19.) After a hearing, the Court granted the motion on June 29, 2004. (Docket Entry Nos. 22 & 23.) Attorney Gregory D. Smith was then appointed to represent Angelus. (Docket Entry No. 24.)

Smith filed motions to change the venue of the case and to recuse all of the judges in the Middle District of Tennessee. (Docket Entry Nos. 29-32.) The Government responded in opposition (Docket Entry Nos. 34-35), and the Court denied both motions. (Docket Entry No. 38.) In the meantime, the grand jury returned a Superseding Indictment which included the same charge, but added sentencing allegations in response to the Supreme Court's then-recent decision in Blakely v. Washington, 542 U.S. 296, 301 (2004). (Docket Entry No. 33.) On September 3, 2004, Angelus was arraigned on the Superseding Indictment. (Docket Entry No. 39.)

Smith then filed two motions in limine on behalf of Angelus, (Docket Entry Nos. 46 & 48), and jury trial was held September 7-9, 2004. (Docket Entry No. 49.) The jury returned a verdict of guilty on the sole count of the Superseding Indictment and also found that Angelus assaulted DUSM Koback by use of a deadly or dangerous weapon and by inflicting bodily injury on him. (Docket Entry No. 51.) Angelus did not testify at the jury trial. He assured the Court he was aware of his right to testify and he waived the right. (Docket Entry No. 74, Trial Transcript at 437-439.) In a subsequent sentencing phase, the jury found that the Government proved each of the three sentencing enhancement factors listed in the Superseding Indictment. (Docket Entry No. 52.)

On September 29, 2004, Angelus *pro se* moved for appointment of a new attorney claiming that Smith rendered ineffective assistance when he led Angelus to believe until just prior to the jury

2

trial that he faced a maximum statutory penalty of ten (10) years. (Docket Entry No. 54.) At the arraignment on the Superseding Indictment, the Magistrate Judge informed Angelus that he faced a maximum statutory penalty of twenty (20) years. The Government filed a response requesting a status conference and Smith joined in the request. (Docket Entry Nos. 55 & 56.) The Court set a hearing and at that hearing directed Angelus and Smith to confer and notify the Court if new counsel should be appointed before sentencing. (Docket Entry No. 60.) Smith notified the Court on December 1, 2004, that Angelus and Smith agreed that Smith could continue to represent Angelus through the sentencing hearing (Docket Entry No. 61), and the Court denied Angelus' *pro se* motion for new counsel. (Docket Entry No. 63.)

The sentencing hearing occurred on December 6, 2004. (Docket Entry No. 65.) Angelus testified in his own behalf. (Docket Entry No. 71, Transcript.) At the conclusion of the proceeding, the Court imposed a sentence of 240 months of imprisonment. (Docket Entry Nos. 66, Judgment; 71, Transcript.)

Angelus filed a Notice of Appeal (Docket Entry No. 64), but he later voluntarily dismissed the appeal. (Docket Entry No. 75.) On Angelus' request, the Sixth Circuit reinstated the appeal. (Docket Entry No. 79.) Angelus was represented by Paul Bruno on appeal. (Docket Entry No. 80.) Angelus raised two issues: (1) this Court abused its discretion in declining to recuse the judges of the Middle District of Tennessee; and (2) pretrial publicity warranted a change in venue. The Sixth Circuit panel concluded that this Court did not abuse its discretion in denying both of Angelus' motions and affirmed the judgment. United States v. Angelus, 258 Fed.Appx. 840, 2007 WL 4561519 (6th Cir. Dec. 27, 2007).

On March 30, 2009, Angelus filed the instant and timely § 2255 motion. (Civil Case No. 3:09-0302, Docket Entry No. 1.) The Court allowed Angelus to file a supporting memorandum at

a later date. (Docket Entry No. 18.) Angelus raised ineffective assistance of counsel against Kathleen Morris, Gregory Smith and Paul Bruno, and his claims against each of them will be discussed below.

## II. STANDARD OF REVIEW

To prevail on a § 2255 motion, the Movant must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993).

To establish ineffective assistance of counsel, Movant must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Movant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." Id. A court need not address both parts of the Strickland test if the Movant makes an insufficient showing on one. Strickland, 466 U.S. at 697.

With regard to the direct appeal, Movant did not have a constitutional right to have every non-frivolous issue raised, see Jones v. Barnes, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel.

4

United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990). An attorney is not required to present an argument for which there is no good-faith factual support in order to avoid a charge of ineffective representation. Krist v. Foltz, 804 F.2d 944, 946-47 (6th Cir. 1986). In fact, the process of "'winnowing out weaker arguments on appeal'" is "the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986). Generally, the presumption of effective assistance of counsel is overcome only when the ignored issues are clearly stronger than the ones presented. Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).

Movant is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, "when the trial judge also hears the collateral proceedings, as [is] the case here, that judge may rely on his recollections of the trial in ruling on the collateral attack." Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

### III. ANALYSIS

**A. Angelus' claim against Kathleen Morris**

The only claim Angelus makes against Kathleen Morris is that she "bailed out" on him not even three (3) months into the case "because she knew the marshal [involved] in the case. I was doomed from the [beginning]. The very foundation of my case of the structure of the case (sic) was and without (sic) meaningful testing, Angelus's constitutional rights have been violated." (Docket Entry No. 18 at 7.)

Kathleen Morris made a proper motion to withdraw as counsel for Angelus, and after a hearing, the Court granted the motion. The attorney did not "bail out" on Angelus; rather, she identified a proper basis for her withdrawal from the case. The Court granted her motion and appointed new counsel. Angelus has not made a proper showing under Strickland that Ms. Morris

5

did anything that remotely could be construed as deficient performance, nor has he identified how he was prejudiced by Ms. Morris's withdrawal from the case. This claim is without merit.

**B. Angelus' claims against Gregory Smith**

In the § 2255 motion, Angelus states that trial counsel failed to prepare adequately for trial because (1) he did not perform any type of investigation, (2) he failed to interview witnesses, (3) he failed to develop a viable defense, and (4) he denied Angelus his constitutional right to testify in his own behalf at trial. Angelus also claims that his trial counsel failed to present any mitigating factors at sentencing. Although Angelus stated in the § 2255 motion that an affidavit would be forthcoming, no affidavit was ever filed.

In the supporting memorandum, Angelus adds a claim that trial counsel should have questioned the law enforcement officers and others more thoroughly about the videotape that was presented at trial, as well as the timing and the outstanding warrants, which he claims no longer exist. He also alleges that, at the request of the United States Attorney, he was taken from the Grayson County Detention Center to see a psychiatrist in town and he was taking psychotropic drugs, Elavil and Prozac, so that he was not in his right mind when he was finally appointed another attorney. He claims this Court should have been told of his condition and a psychiatric evaluation should have been requested and ordered. Angelus also renews the claim that his trial counsel was ineffective for leading him to believe that the maximum statutory sentence he faced was ten (10) years, when in reality he faced twenty (20) years.

Angelus has not produced any facts to support his claims. The Court presided at the jury trial, and in addition to the Court's independent recollection of the trial, the Court reviewed the trial and sentencing transcripts. The Court is convinced after such review that attorney Smith performed

6

proficiently in representing Angelus at trial and that there is no merit to Angelus' multiple claims of ineffective assistance under Strickland.

It is obvious in reviewing the trial transcript that Mr. Smith was very prepared for the jury trial. He had certainly conducted pretrial investigation and reviewed discovery documents, including grand jury witness statements that were provided to him by the Government, because he used these materials skillfully in his cross-examination of the Government's witnesses. Considering all of the Government's evidence that Angelus intentionally assaulted USDM Koback in the course of an arrest, Mr. Smith formulated what may have been the only viable defense–that the entire incident lasted approximately eight (8) seconds, Angelus was surprised when DUSM Koback approached the truck in which Angelus was sitting, Angelus did not see police identification, Angelus tried to get away quickly because he thought he was being carjacked, and he did not intend to injure DUSM Koback.

Mr. Smith spent a great deal of time pointing out to the jury those portions of the security videotape taken at the scene (and still photographs retrieved from the tape) that were helpful to Angelus' defense. Mr. Smith also asked numerous questions of witnesses in an effort to help the jury draw inferences in favor of Angelus and to show biases of the witnesses. Mr. Smith obtained admission into evidence of photographs and a sketch to support the defense. (Docket Entry No. 50, Clerk's Resume.) He also convinced the Court to take judicial notice of the carjacking statute and to instruct the jury on that theory of defense. He was at least partially successful on the motions in limine he filed because the Court kept certain evidence out of the trial and away from the jury as requested.

Angelus, on the other hand, has not identified a single witness that defense counsel should have called to the stand or any additional investigation that Mr. Smith should have done that he did

not do. Angelus has not shown how a psychiatric evaluation would have helped his defense, and there is no indication in the record that Angelus was incompetent to proceed with his trial. Angelus waived his right to testify in his own behalf at the trial, and in doing so Angelus told the Court it was his own decision not to testify. At sentencing, Angelus did take the stand in an effort to bring out mitigating factors about his childhood and background and to show remorse for the crime. There was no hint in the sentencing testimony that Angelus was incompetent or did not know what he was doing.

Thus, based on the trial record, the Court concludes there is no merit to Angelus' claims that his trial counsel failed to prepare adequately for trial, failed to perform any type of investigation, failed to interview witnesses, failed to develop a viable defense, or denied Angelus his constitutional right to testify in his own behalf at trial. Mr. Smith did present mitigating factors at sentencing, contrary to Angelus' claim that he did not. Angelus has not met the familiar Strickland standard to persuade the Court that he is entitled to § 2255 relief on these claims.

The Court previously addressed in an Order (Docket Entry No. 63) Angelus' claim that Mr. Smith misled Angelus before trial about the maximum statutory penalty he faced. The Court stated in the Order that it listened to the audiotape of the arraignment on the Superseding Indictment that was conducted before the Magistrate Judge. The issue came up during the hearing that defense counsel had consulted an older version of the statute, 18 U.S.C. § 111(b), and because of that he advised Angelus that the maximum enhanced statutory penalty was ten (10) years. The Magistrate Judge checked the current statute and properly informed Angelus more than once that the statute had been amended and the maximum penalty was twenty (20) years. In the prior Order addressing Angelus' ineffective assistance claim, the Court stated that the "Magistrate Judge's clear explanation on the correct statutory maximum penalty cured any alleged ineffective assistance that the Defendant

8

believes occurred. See United States v. Todaro, 982 F.2d 1025, 1029 (6th Cir. 1993)." (Docket Entry No. 63 at 3.)

Even assuming that Mr. Smith performed deficiently in referring to an outdated version of the statute, Angelus has not shown how counsel's failure to apprise him of the correct statutory maximum sentence prior to trial prejudiced him. The Magistrate Judge's advice to Angelus that he faced a maximum statutory penalty of twenty (20) years cured any problem that may have existed. Angelus knew before his jury trial began what statutory penalty he was facing; yet, he continued to jury trial, as was his right. Even if Angelus now believes that he could have obtained a plea agreement to serve a sentence less than twenty (20) years (assuming the Government would have offered such a plea agreement), Angelus has not alleged that he would have accepted such a plea offer in lieu of going to trial. Therefore, he has not shown prejudice under Strickland.

In his second reply brief, Angelus states that he directed his counsel, Mr. Smith, to challenge his sentencing enhancements on direct appeal; however, Mr. Smith refused to even consider the request. There is no indication in the court records that Mr. Smith represented Angelus on appeal. Mr. Paul Bruno was appointed to serve as appellate counsel. Therefore, Mr. Smith cannot be held responsible for any alleged errors Angelus believes were made on appeal by Mr. Bruno.

Angelus also states in his second reply brief that documents relevant to a career offender sentencing enhancement were omitted from the discovery provided to his defense counsel and this omission constituted a Brady violation. Angelus refers to certain attachments to his reply brief (Docket Entry No. 34-1), but these attachments are state sentencing documents that were apparently sent to Angelus directly at his request by a New Jersey state court judge. Angelus has not shown that these documents were in the Government's possession and that the Government failed to turn

9

the material over to the defense, nor has he shown that these documents would have affected his sentence.

## C. Angelus' claim against Paul Bruno

Angelus did not mention his appellate counsel, Paul Bruno, in the § 2255 motion itself. At the conclusion of the § 2255 supporting memorandum, Angelus stated: "even the appeal that was filed, was down-wright eneffective (sic)." Angelus did not mention his appellate attorney by name or give any details as to how or why the appeal was ineffective. In the reply brief, Angelus asserts that appellate counsel refused to include on appeal issues related to Angelus' mental and emotional state during the commission of the crime and at trial.

As explained above, Angelus has not established any facts to support the claim that he needed a psychiatric evaluation or that he was incompetent during his trial. Therefore, he has not explained why one or more issues concerning his mental or emotional state should have been raised on appeal or his reasons for stating that Mr. Bruno refused to include the issues in the appellate brief. Angelus fails to make a Strickland showing that Mr. Bruno performed deficiently in handling the appeal, and that the deficient performance resulted in prejudice to Angelus. See Jones, 463 U.S. at 750-54; Perry, 908 F.2d at 59. This claim is also without merit.

## IV. CONCLUSION

For all of the reasons stated, Angelus' Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docket Entry No. 1) will be DENIED.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE